**IN THE COURT OF APPEALS OF IOWA**

No. 15-2200
Filed October 26, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**TONI LYNN REESE,**
　　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Adair County, Martha L. Mertz, Judge.

A defendant appeals her aggravated-misdemeanor conviction for harboring a runaway. **AFFIRMED.**

Joey T. Hoover of Hoover Law Firm P.L.L.C., Winterset, for appellant.

Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Sharon K. Hall, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A jury found Toni Reese guilty of harboring a runaway. The runaway was her thirteen-year-old granddaughter, S.P. Reese argues the State offered insufficient proof of her guilt, asserting the actual harboring was done by S.P.'s biological mother, who was Reese's daughter. Because the State offered ample evidence of Reese's active participation in the crime, we affirm the conviction.

To convict Reese of harboring a runaway, the State was required to prove three elements: (1) S.P. was a runaway child, meaning she was under eighteen years of age and was voluntarily absent from her home without the consent of her guardian; (2) Reese aided, supported, or sheltered S.P.; and (3) Reese intended to allow S.P. to remain away from home against the wishes of her guardian. *See* Iowa Code § 710.8 (2015).

We review Reese's challenge to the sufficiency of the evidence for the correction of legal error. *See State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). We view the evidence in the light most favorable to the jury's verdict, "including all reasonable inferences that may be fairly drawn from the evidence." *See id.* (citation omitted). We will uphold the jury's verdict if substantial evidence supports it. *See id.* Evidence qualifies as substantial when a reasonable trier of fact relies on it to find the accused guilty beyond a reasonable doubt. *Id.*

The State presented the following evidence to the jury. In 2014, S.P. lived in Polk County with her father and stepmother, Dawn. The father had legal custody of the teenager. The biological mother, Julie, had supervised visitation under the condition she provided clean drug tests. The father died in April 2014.

Because Dawn was worried about Julie's stability, she obtained a guardianship over S.P.

In early October 2014, Dawn allowed S.P. to stay overnight with Julie, who "looked to be healthy" and drug-free. When Julie brought S.P. back from the one-night visit, S.P. was "visibly upset" and asked to move in with Julie, who lived with Reese in a house in Bridgewater. Dawn acceded to the wishes of S.P., who packed a few belongings and went with Julie. The next day, Dawn's lawyer advised her to resume custody of S.P. and go through the courts to terminate the guardianship. Following that advice, Dawn asked Julie to return S.P. When that did not happen, Dawn contacted law enforcement in Adair and Polk Counties. Those authorities eventually reported S.P. as a runaway. When Dawn telephoned Reese to seek the grandmother's cooperation in returning S.P., Reese hung up on her.

S.P. testified that when Dawn kept calling Reese's residence during the three weeks S.P. stayed there, Reese "ended up disconnecting the phone." Reese also suggested to her granddaughter that they "go underground" by "cutting our hair and changing our names and leaving." When S.P. felt sick during her stay, Reese tended to her and gave her medicine.

An Adair County deputy sheriff went to Reese's residence four times in October 2014 to find S.P. Reese was not forthcoming about S.P.'s whereabouts and alluded to the deputy that the teenager was staying with friends. S.P. recalled that during two of the police visits, Reese told her to hide. On the fourth try, when executing a search warrant, the deputy found S.P. concealed inside the clothes dryer.

On appeal, Reese acknowledges the "definition of a runaway is most likely expansive enough in its language" to cover a later withdrawal of consent by the guardian. But Reese attacks the State's proof she was the person who harbored S.P., asserting "it was the biological mother who was providing aid, support, or shelter" for the runaway child. Reese notes the State is not relying on a theory of aiding and abetting. Reese also argues section 710.8 does not require a person to report a runaway being in the same house. *See State v. Freemont*, No. 03-0139, 2004 WL 2168424, at *2 (Iowa Ct. App. Sept. 29, 2004) (reviewing dictionary definitions of aid, support, and shelter).

The State told the jury during closing arguments: "[I]t doesn't make [Reese] any less guilty of what she's done to say, well, somebody else should have been charged too." We agree with that argument. Reese provided shelter for S.P. in the home she shared with her daughter, Julie. Unlike the accused in *Freemont*, who was "merely a guest" at the house where the runaway spent several nights, Reese was buying her residence on contract and exercised control over the activities that occurred there. *See id.* Moreover, the grandmother shunned contact with Dawn, the legal guardian, and assisted S.P. in evading detection by police, intending to allow the teen to remain away from home against Dawn's wishes. *See People v. Ison*, 346 N.W.2d 894, 897 (Mich. Ct. App. 1984) (inferring essential element of "'harboring' a runaway juvenile is an intent to encourage, counsel, or assist the juvenile in evading lawful custody"). Whatever culpability Julie may have had in aiding S.P.'s absence from Dawn's custody, Reese played an independent and active role in giving S.P. refuge from

the child's legal placement. The district court correctly denied Reese's motion for judgment of acquittal.

**AFFIRMED.**